UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KAYLA E.,[1]

                              Plaintiff             DECISION and ORDER

-vs-

                                            1:23-CV-0593-CJS

COMMISSIONER OF SOCIAL
SECURITY,
                              Defendant.
_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits.   Plaintiff maintains that such determination is affected by errors of law and not supported by substantial evidence.   In that regard, Plaintiff primarily maintains that remand is required because the Administrative Law Judge ("ALJ") who denied her claim failed to comply with an Order of the Appeals Council, directing the ALJ to develop the record.   Now before the Court is Plaintiff's motion (ECF No. 10) for judgment on the pleadings and Defendant's cross-motion (ECF No.16) for the same relief. For reasons discussed below, Plaintiff's application is granted, Defendant's application is denied, and the matter is remanded to

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

the Commissioner for further administrative proceedings.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.  The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."  20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v.*

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim. In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West). Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

---

*Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's

4

decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

Also, when considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on any *post hoc* rationalizations offered by the Commissioner, but it may consider evidence that was evidently considered by the ALJ even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*. *See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also, Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be

6

gleaned from the ALJ's decision as a whole.').").

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, which is set forth in the parties' papers. The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

On May 20, 2018, Plaintiff applied for SSDI benefits, and on December 10, 2020, she also filed for SSI benefits. When applying for SSDI benefits, Plaintiff claimed to be disabled due to "ADHD," "anxiety," "depression," "bipolar," and "mild scoliosis." Tr. 222. When applying for SSI benefits, Plaintiff claimed to be disabled due to "ADHD," "delayed processing," "depression," "anxiety," and "bipolar." Tr. 696. Plaintiff left school in the ninth grade and has a very limited work history, consisting mainly of a few brief stints at fast food restaurants and retail establishments. As of the last administrative hearing in this matter, which was held on February 3, 2023, Plaintiff was age 28, with a height of 5' 2" and weight of 260 pounds. Tr. 405, 696. At that time, Plaintiff was performing some part-time work, making telephone calls for a debt-collection agency. Tr. 411. Plaintiff, along with her four children and her unemployed boyfriend, is primarily supported by social services. At various times Plaintiff's children have been removed from her care by Child Protective Services ("CPS").

Plaintiff claims to be unable to work due to her non-exertional mental health impairments. Plaintiff states that she experiences "depressive spurts" in which she does not want to get out of bed in the morning, and that feels "overwhelmed" at work and has difficulty breathing. Tr. 413-414, 421-422. Plaintiff essentially indicates that she lies in

bed all day doing nothing except using her phone to play games and "scroll" on Facebook. Tr. 416-419.  Physically, Plaintiff claims that she has difficulty standing due to a bone spur in her left heel. Tr. 415.  Plaintiff does not claim to experience side-effects from her medications. Tr. 415.  Plaintiff claims that she can care for herself, but that she does not perform any household chores or cooking. Tr. 418.

At all relevant times relating to this action, Plaintiff has been represented by the same law firm, Hiller Comerford Injury & Diability Law ("the Hiller Firm"). The first administrative hearing concerning Plaintiff's claims was conducted on November 25, 2019.  The administrative record at that point included four separate exhibits from Plaintiff's mental health therapists, the Dale Association ("Dale Association"), consisting of treatment records for the period between June 2017 and January 2020. ECF No. 5 at p. 3.  On January 31, 2020, the ALJ issued a decision denying Plaintiff's claim. Tr. 19-71.  On October 14, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 7.

On December 9, 2020, Plaintiff commenced an action in this Court, 1:20-CV-01809-EAW, to review the Commissioner's determination.  The action was assigned to the Honorable Elizabeth Wolford, United States District Court Judge.

While the federal court action was pending, on May 17, 2021, the New York State Office of Temporary Disability Assistance ("the State Agency") sent a request for additional medical records to the Dale Association. Tr. 1050.  In particular, the State Agency requested "all record and clinic notes from 1/1/2021 to current." Tr. 1051.  On May 20, 2021, the Dale Association responded and provided four pages of notes,

8

documenting office "telehealth" treatment encounters on January 21, 2021, February 18, 2021, March 25, 2021, and April 15, 2021, respectively. Tr. 1054, 1056, 1058, 1060.

On October 21, 2021, Plaintiff filed a motion for judgment on the pleadings (ECF No. 11) in the District Court Action pending before Judge Wolford, alleging primarily that the ALJ had erred by failing to obtain missing mental health treatment records from the Dale Association for 2017 through 2019. However, on November 22, 2021, the parties stipulated to remand the District Court action to the Appeals Council.

On January 24, 2022, the Appeals Council vacated the Commissioner's decision and remanded the matter to an ALJ, stating:

> The Appeals Council hereby vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for resolution of the following issue:
>
> ● Remand for further development and consideration of the record is necessary. At the claimant's hearing on November 25, 2019, the Administrative Law Judge asked if the record was complete, and the claimant's representative requested additional time to obtain any missing counseling notes from Dale Association (Hearing Transcript, pages 4-5). At the end of the hearing, the representative indicated he would need two weeks to obtain records from Western New York Psychotherapy and Dale Association, and the Administrative Law Judge informed the claimant that once these records came in, she would review the case and issue a decision (Hearing Transcript, pages 31-32). The Administrative Law Judge further stated that she expected the records within two weeks, and if the representative needed additional time, any request for an extension should be submitted within those two weeks, and absent a showing of good cause, a decision would be issued with or without the records (Hearing Transcript, page 32).
>
> The representative thereafter submitted some records from Dale Association on December 2, 2019; December 31, 2019; and January 15,

9

2020. <u>These records were largely dated from 2019-2020, and did not include any of the potential missing records from 2017 or 2018.</u> The representative also submitted correspondence on December 11, 2019, requesting that the record be kept open for an additional two weeks (Exhibit 14E). The Administrative Law Judge accepted and exhibited the new evidence as Exhibits 5F-7F, including the evidence submitted after the two-week period following the hearing, and issued a decision on February 5, 2020. The Administrative Law Judge did not respond to the representative's request for an additional extension, but held the record open for additional time and accepted late evidence.

In discussing the mental health records from Dale Association, the Administrative Law Judge discussed the July 2017 intake (Exhibit 1F), and stated <u>that there were treatment plans but no other treatment notes for 2017</u> (Decision, page 9). <u>The Administrative Law Judge then discussed a medication management note in June 2018, stated there was no evidence of further treatment for nearly a year and a half, and went on to discuss evidence from November 2019</u> (Decision, page 9). The Administrative Law Judge also noted in evaluating the claimant's symptoms that the claimant's case was exceedingly routine and conservative, consisting apparently of medication management and counseling at infrequent intervals (Decision, page 11). <u>However, the record shows explicit reference to the claimant's mental health treatment sessions for which no notes were obtained, resulting in gaps in the record. This includes numerous treatment sessions from 2017 to 2019 that are referenced in the file, but with no corresponding individual treatment notes</u> (Exhibits 1F/20-24, 4F/2-3, 5F/6, 6F/5). Although <u>the record does not include the individual counseling notes for these sessions</u>, the evidence is still contrary to the decision's statement that there was no evidence of treatment for nearly a year and a half during 2018 and 2019 (see evidence of treatment in April, August, and October 2019 (Exhibits 4F/2-3, 6F/5)). The decision thus misstates the claimant's course of treatment.

On remand, the Administrative Law Judge should assist the claimant's representative in attempting to obtain any missing treatment notes from Dale Association, and reevaluate the evidence relating to the claimant's mental health treatment.

10

> Upon remand, the Administrative Law Judge will:
>
> ● Further develop and evaluate the record, and request all treatment notes from Dale Association and any associated mental health providers (20 CFR 404.1512).

Tr. 476-477.

A new hearing was scheduled to occur before an ALJ on September 30, 2022. Tr. 615. However, on September 9, 2022, Plaintiff's counsel wrote to the ALJ that she had been attempting to develop the record and obtain the missing treatment records, but had been unable to do so because of problems communicating with Plaintiff. Specifically, Plaintiff's attorney wrote:

> Dear Judge DiMaggio Walls:
>
> Please be advised that my office has experienced significant difficulty developing the record in this case due to contact issues with Ms. Ewing.
>
> Our case managers have made multiple, largely unsuccessful efforts to contact the claimant following our receipt of the Appeals Council Remand Order. Following the remand order, Ms.Ewing did provide a medical update to my office, but has not returned the updated authorization <u>so that we can obtain these treatment notes</u>.
>
> I was personally able to make contact with Ms. Ewing on July 29, 202 via email, at which point she provided a phone number. Several attempts had been made to set up a phone conversation to discuss her medical treatment history, however she has not answered the phone and has since stopped responding to emails.
>
> I apologize for any inconvenience and we will continue to make efforts to re-establish contact with the claimant and obtain updated medical records in advance of hearing.

Tr. 749 (emphasis added).

On September 29, 2022, Plaintiff's counsel notified the ALJ that she had re-established communication with her client, and that Plaintiff wanted to proceed with the hearing on September 30, 2022. Tr. 753. Plaintiff's counsel's letter did not mention whether she had made any progress towards obtaining the missing "treatment notes" from the Dale Association.

On September 30, Plaintiff failed to appear for the telephonic hearing. Tr. 621.[6] Nevertheless, her attorney appeared, and there is a transcript of the discussion between her attorney and the ALJ. Tr. 432-441. In pertinent part, the following discussion took place concerning the evidentiary record:

> ALJ:  So let me ask you this, counsel.  Have you had an opportunity to review the evidence in this file?
>
> ATTY:   I have.
>
> ALJ:    Any objections to the evidence you've seen?
>
> ATTY:   No objections, thank you.   I would just like to note for the record I did not see the resume of the vocational expert, so I'm not sure who is testifying today.
>
> AJL: Let's see, okay.  Yeah, it looks like that was just added to the file.  The vocational expert today is going to be Lynn Paulson[.]
>
> ATTY: Wonderful, thank you.
>
> ALJ:   You're welcome.   And then I know that you had indicated there were possibly more medical records out there so I won't be closing the file today

---

[6] Plaintiff later indicated that the reason she did not appear for the hearing was because there had been a power outage at her home. Tr. 624.

or closing the record today.   But I will go ahead and admit into evidence what we do have.   We've got Exhibits 1A through 8A, 1B through 29B, 1D through 23D, 1E through 28 E, and then 1F through 23F.   <u>Of course, if your continued efforts produce anything I'll let those in</u>.

Tr. 433-434 (emphasis added).   The hearing was rescheduled to continue, with Plaintiff present, on February 3, 2023. Tr. 625.

On, November 22, 2022, Plaintiff's counsel sent another request for medical records to the Dale Association. Tr. 1460-1461.  Apparently, this was the first such request for additional records from the Dale Association made by anyone since the Appeals Council's remand order.   Although, and importantly, counsel's request did not reference the missing treatment records from 2017, 2018, and 2019, that were mentioned in the Appeals Council's Remand Order.   Instead, counsel requested only that Dale Association provide "all treatment notes and medical records including diagnostic test results (i.e. x-rays, blood tests, etc.) and mental health records <u>from 4/16/2021 to Present</u>." Tr. 1460. (emphasis added) (The reader will recall that prior to this request, the last treatment record provided by the Dale Association was dated April 15, 2021. Tr. 1060.).   Plaintiff's counsel later filed the new documents received from the Dale Association as Exhibit 24F. Tr. 1197-1462.   The treatment notes cover the period between January 19, 2022, and August 16, 2022. ECF No. 5 at p. 6.

On February 3, 2023, the matter came on for a new hearing before the ALJ. Tr. 405-429.   At the start of the hearing, the following exchange took place between the ALJ and Plaintiff's attorney:

ALJ: [Counsel,] have you had an opportunity to review the record in this case?

13

>   ATTY: I have, and I have no objections.
>
>   ALJ: All right.   Do you anticipate any new evidence coming in?
>
>   ATTY:   No, Your Honor.

Tr. 408.   Nothing further was said about the completeness of the record by anyone during the hearing, nor was there any specific mention of the Appeals Council's Remand Order or its contents.   Additionally, no questions were asked during the hearing specifically concerning Plaintiff's treatment at the Dale Association during 2017 and 2018.   Indeed, the Dale Association was not mentioned during the hearing.

On February 27, 2023, the ALJ issued a decision denying Plaintiff's applications for SSDI and SSI benefits. (Tr. 378-396).   The ALJ noted, in pertinent part, that the Appeals Council had remanded the matter for development of the record (Tr. 378).   The ALJ said nothing further about the completeness of the record, except to state: "The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's hearing." (Tr. 379).

On June 26, 2023, Plaintiff commenced the subject action, still represented by the Hiller Firm.[7]   On October 23, 2023, Plaintiff filed the subject motion for judgment on the pleadings, ECF No. 10.   As mentioned earlier, Plaintiff primarily contends that remand is required since the ALJ "flouted the Appeals Council Order to develop a complete record." ECF No. 10-1 at p. 16.   In support of that argument, Plaintiff states, in pertinent part:

---

[7] There is no mention of any review of the most-recent ALJ's decision by the Appeals Council before Plaintiff commenced this action, and the ALJ's decision therefore apparently became the Commissioner's final decision in this case pursuant to 20 C.F.R. § 404.984.

14

> The ALJ flouted the Appeals Council Order to develop a complete record, including any missing treatment notes from The Dale Association. . . . Despite the Order from the Appeals Council to develop the complete record, including requesting any and all missing treatment notes from The Dale Association, <u>nearly all of the mental health treatment records from 2017 through 2020 were missing from the record</u>. (Tr. 378, 474-480). The ALJ was on notice of numerous dates that existed but were missing, and she was ordered by the Appeals Council to obtain these missing records – she did not. The ALJ failed in her obligation to develop this full medical record, in an error that was clearly harmful to Plaintiff. Remand is, therefore, required.

ECF No. 10-1 at p. 16 (emphasis added).

The Commissioner opposes Plaintiff's motion, and states, with respect to the argument concerning the alleged failure by the ALJ to develop the record, in pertinent part the following:

> The ALJ held a hearing in September 2022, after the Appeals Council Order, in which Plaintiff did not appear. Tr. 430-41. At this hearing, the ALJ and attorney discussed the possibility of more medical evidence being available, as Exhibit 24F was not yet in the record. Tr. 433-34. The ALJ stated: "And then I know that you [counsel] had indicated there were possibly more medical records out there so I won't be closing the file today or closing the record today." Tr. 433. The ALJ continued, "Of course, if your continuing efforts produce anything I'll let those in. And then if we're able to reach her [Plaintiff] we'll find out what other stuff may be outstanding." Tr. 434.
>
> At the following hearing in February 2023, at which Plaintiff appeared, Exhibit 24F had been received from Dale Association. Tr. 409. The ALJ specifically asked Plaintiff's attorney: "[H]ave you had an opportunity to review the record in this case?" Tr. 408. The attorney indicated that she had. Tr. 408. The ALJ followed up by asking "Do you anticipate any new evidence coming in?" Tr. 408. The attorney replied that she did not. Tr. 408.
>
> The Commissioner maintains that no error was committed in following the

15

>Appeals Council Order or in the duty to develop the record. The Agency received updated records from Dale Association. A May 17, 2021 request for records from Dale Association was sent from the State agency. Tr. 1050-53. The ALJ asked in two hearings about outstanding records, she kept the record open at the first hearing, admitted the new exhibit from Dale Association after that hearing, and received a response from Plaintiff's counsel at the second hearing that no new evidence was anticipated.

ECF No. 16-1 at pp. 7-8.

The Court has considered the parties' submissions, including Plaintiff's reply, and the entire administrative record.

## DISCUSSION

The Court finds that remand is required for development of the record, although not for the reason argued by Plaintiff.   In that regard, Plaintiff repeatedly asserts that the ALJ "flouted" the Appeal Council's remand order by failing to obtain the missing records from the Dale Association.   However, after the remand by the Appeals Council, Plaintiff's counsel indicated to the ALJ that <u>she</u> would obtain the missing records, Tr. 749.[8]   And, later, at the hearing, Plaintiff's counsel told the ALJ that the record was complete, Tr. 408. Consequently, Plaintiff's counsel's insistence now, that the ALJ "flouted" the Appeals Council's Order by failing to obtain those same records, seems to be an unfair attempt to deflect blame onto the ALJ.

This is particularly true since it appears Plaintiff's counsel never specifically

---

[8] Again, in her letter to the ALJ dated September 9, 2022, Plaintiff's counsel stated in pertinent part: "Following the remand order, Ms.Ewing did provide a medical update to my office, but has not returned the updated authorization so that we can obtain these treatment notes."   In this context, the reference to "these treatment notes" clearly appears to refer to the missing treatment notes mentioned in the remand order.

16

requested the missing records from Dale, despite indicating that she would do so. Indeed, this entire problem could have been averted if, when counsel sent her request to Dale on November 22, 2022, she had simply requested all the missing records, rather than only requesting records "from 4/16/2021 to Present." Tr. 1460.   However, it appears that between September 9, 2022, when counsel wrote to the ALJ and stated that she would obtain the missing records, and November 22, 2022, when she actually requested records from Dale, counsel seems to have forgotten what records she was supposed to be obtaining.

To reiterate, the so-called missing records that were identified by the Appeals Council pertained to the period 2017 through 2019.  The Appeals Council's order indicated that upon remand, the ALJ should "assist the claimant's representative in attempting to obtain any missing treatment notes from Dale Association," and that the ALJ "will request all treatment notes from Dale Association and any associated mental health providers."   In the Court's view, the Appeals Council's first direction, to "assist the claimant's representative in attempting to obtain any missing treatment notes," presupposes that if Plaintiff's counsel required such assistance, she inform the ALJ of that fact, which she never did.  Additionally, the Court thinks that it was reasonable for the ALJ not to make her own request for the missing records, since Plaintiff's own counsel advised the ALJ that the record was complete.   Plaintiff's contrary argument essentially implies that it was wrong for the ALJ to trust what Plaintiff's counsel told her.

Still, the fact remains that since the date the Appeals Council issued its remand order, there has been no specific request made to the Dale Association for the apparently-

17

missing treatment notes from 2017-2019.  In that regard, Plaintiff's counsel did make a request for additional records from Dale, but that request was specifically for "mental health records from 4/16/2021 to Present." Tr. 1460.  Moreover, the batch of records that was requested by the State Agency and received while Plaintiff's first federal court action was pending relates to treatment during 2021. Tr. 1054, 1056, 1058, 1060.  And, finally, the last batch of records received from Dale, Exhibit 24F, relates to treatment during 2022. Tr. 1197-1462.  Accordingly, it appears that to the extent the treatment notes from 2017-2019 exist, they are still missing.[9]

In sum, for the reasons just discussed, the Appeals Council's Remand Order has never been effectuated, and the record is seemingly still undeveloped.  Under the circumstances, the Court finds that the blame for this must ultimately rest on the ALJ, to whom the remand order was directed, since she failed to verify that a specific request for the missing records from 2017-2019 had been sent to Dale in accordance with the Appeals Council's Order, notwithstanding Plaintiff's counsel's assurances that the record was complete.   The Court therefore finds that remand is required:

> An ALJ is required to "take any action that is ordered by the Appeals Council." 20 C.F.R. §§ 404.977(b), 416.1477(b). Accordingly, "[an] ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand." *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009).

---

[9] Defendant's counsel suggests that such a concern may be illusory, since there is an indication in the record that Dale already sent its entire file. See, Def. Memo of Law, ECF No. 16-1 at p. 9 ("A note from Dale Association in January 2020 indicates that 'the entire chart' was sent, thus indicating that the notes alluded to may not have been available from the source.").   However, that notation was specifically in response to a request for records "from August 7, 2019 to present," and, moreover, only fourteen pages of records were sent in response to the request. *See*, Exhibit 7F.   Consequently, it does not appear that the notation actually means what Defendant suggests it might mean.

*Tracy v. Colvin*, No. 1:15-CV-00980 (MAT), 2017 WL 279556, at *2 (W.D.N.Y. Jan. 23, 2017); *see also, James B. v. Comm'r of Soc. Sec.*, No. 21-CV-0542-FPG, 2023 WL 3407535, at *3 (W.D.N.Y. May 12, 2023) ("The failure of an ALJ to abide by the directives in an Appeals Council remand order constitutes legal error requiring remand.") (collecting cases). The action is remanded for further administrative proceedings consistent with the Appeals Council's remand order and this Decision and Order.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 10) for judgment on the pleadings is granted, Defendant's cross-motion (ECF No. 16) for the same relief is denied, the administrative decision is vacated, and the matter is remanded to the Commissioner for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
       August 28, 2024

ENTER:

_____
CHARLES J. SIRAGUSA
United States District Judge